UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DCS REAL ESTATE INVESTMENTS,
LLC,

    Plaintiff,

v.                                                                        Case No:  5:14-cv-678-JSM-PRL

BELLA COLLINA EVENTS, LLC,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and, in the Alternative, to Transfer to the Middle District of North Carolina (Dkt. #6), filed January 9, 2015; and DCS Real Estate Investments, LLC's response in opposition thereto (Dkt. #15), filed February 2, 2015. Upon review, the Court concludes that Defendant's motion should be granted and Plaintiff's complaint should be dismissed.

## BACKGROUND

This motion arises in relation to Plaintiff DCS Real Estate Investments, Inc's ("DCS") action under the Lanham Act for trademark infringement and related claims. Defendant Bella Collina Events, LLC ("BCE") petitions the Court to dismiss DCS's complaint for lack of personal jurisdiction.

In 2012, DCS, a Florida limited liability company, acquired a clubhouse, golf course, and other assets located at an exclusive residential community in Lake County, Florida, known as "Bella Collina." One of the assets was the service mark "Bella Collina" (the "Mark"). DCS uses its Mark to market and promote the Bella Collina community and facilities, including weddings, wedding planning, and other events.

BCE, a North Carolina limited liability company, is in a similar line of business. It provides wedding related services in and from its location in Stokesdale, North Carolina, such as planning, arranging, and providing facilities for wedding ceremonies. BCE has only a single employee, and it regularly utilizes two independent contractors. BCE also occasionally contracts with other independent vendors for the provision of wedding-related services. BCE's employee and all of its contractors work and live in North Carolina. No one travels to Florida on behalf of BCE, BCE has no real estate or other property in Florida, and its principal place of business is in North Carolina. All of BCE's services are provided in North Carolina.

BCE's advertising efforts are targeted at the geographic area surrounding Stokesdale, North Carolina. The company has a website at URL http://www.bellacollinamansion.com, accessible to anyone using the internet. No one can order or book services through the website, and the website clearly indicates that BCE is located in North Carolina. BCE also advertises its wedding services on national websites such as *The Wedding Wire* and www.theknot.com. But its profiles on these websites unambiguously reflect that BCE is located in North Carolina, and BCE has not used these websites to solicit business, advertise, or market in Florida. However, because BCE

markets its services under the name "Bella Collina Events," which is similar to DCS's Mark, some of DCS's potential customers have confused BCE's services with those offered by DCS.

In an attempt to resolve this issue, counsel for DCS contacted BCE to inform it that DCS owned and used the "Bella Collina" mark in the advertising, promotion, and sale of wedding services, including planning and events, in Lake County, Florida. Shortly thereafter, BCE registered the mark "Bella Collina Events" for wedding planning and events at the United States Patent and Trademark Office. Since DCS informed BCE of the confusion resulting from their similar names, DCS has received at least one inquiry about wedding services from a customer who had apparently confused the two entities. Because BCE did not comply with DCS's request to stop advertising its services under the name "Bella Collina Events," DCS filed suit alleging various trademark violations arising from BCE's use of the Mark.

## DISCUSSION

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

### A. Florida's Long-Arm Statute

The Florida long-arm statute establishes jurisdiction over non-resident defendants who commit certain enumerated acts. *See* Fla. Stat. § 48.193. Relevant to the instant

inquiry, the statute permits a Florida court to exercise its jurisdiction over any non-resident who "commit[s] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Here, DCS claims that jurisdiction over BCE is appropriate under this section of the statute because BCE used DCS's Mark and solicited business through Florida using at least three websites (its own website, *The Wedding Wire*, and www.theknot.com) designed to promote services almost identical to those offered by DCS. Even though the websites were created and operated outside of this state, "the Florida long-arm statute is satisfied if the alleged trademark infringement on the website caused injury in Florida." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Accordingly, DCS has sufficiently invoked Florida's long-arm statute.[1]

## B. Constitutional Due Process

Even where jurisdiction is appropriate under the state long-arm statute, "the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). The Constitution prohibits the exercise of personal jurisdiction over a non-resident defendant unless the defendant has fair warning that it may be haled into court

---

[1]DCS also alleges that jurisdiction is proper under § 49.193(1)(a)(1) of Florida's long-arm statute because BCE has "[o]perat[ed], conduct[ed], engag[ed] in, or carr[ied] on a business or business venture in this state." DCS seems to rely on BCE's alleged use of its website to attract customers from Florida, but it is readily apparent that BCE's advertising techniques are not specifically aimed at Florida, nor can potential customers procure services virtually. Because BCE does not use its website to do business in Florida, this subsection of Florida's long-arm statute is ineffective to establish jurisdiction over BCE. *See Golant v. German Shepard Dog Club of Am., Inc.*, 26 So. 3d 60, 62 (Fla. 4th DCA 2010) ("To invoke long arm jurisdiction under section 48.193(1)(a), the activities of the corporation must be considered collectively and show a general course of business activity in the State for pecuniary benefit." (citation and internal quotation marks omitted)).

4

in that particular forum. *Id.* (citing *Shaffer v. Heitner*, 433 U.S. 186 (1977) (Stevens, J., concurring in judgment)). Specifically, the defendant must have "purposefully directed" its activities at residents of the forum and the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Because DCS's injury arises out of BCE's alleged trademark violation, the sole issue here is whether BCE purposefully directed its conduct at residents of Florida. In intentional tort cases, there are two tests the court may apply to determine whether the defendant engaged in purposeful conduct aimed at the forum state. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013). The first is the traditional "minimum contacts" analysis, under which personal jurisdiction over a non-resident defendant is predicated on "minimum contacts" between the defendant and the state. *Id.*; *Keeton*, 465 U.S. at 774. In the alternative, the court may apply the *Calder*[2] "effects" test to determine jurisdiction. *Id*. For the reasons articulated herein, the Court concludes that DCS has failed to establish this Court's jurisdiction over BCE under either of these standards.

### 1. The "Minimum Contacts" Test

Under the "minimum contacts" test, the inquiry is whether the defendant's contacts "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the

---

[2]*Calder v. Jones*, 465 U.S. 783 (1984).

forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. The court must identify all contacts between a nonresident defendant and a forum state and ask whether these contacts satisfy the test. *Id.*

Here, the sole contact between BCE and Florida is BCE's online presence on websites accessible in Florida. Because BCE did not utilize its online presence to actively solicit business from Florida residents, BCE did not purposefully avail itself of the Florida forum in such a way that it could reasonably foresee being haled into a Florida court. Thus, the "minimum contacts" test has not been satisfied. *C.f. id.* (finding that the "minimum contacts" standard had been met where one of the defendant's multiple contacts with Florida was a fully interactive, commercial website the defendant used to purposefully solicit business from Florida residents).

## 2. The "Effects" Test

Under the "effects" test, to qualify as a sufficient basis for jurisdiction, the tort must have been "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286 (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474 (9th Cir. 1995)). Under this standard, jurisdiction may be exerted over a non-resident defendant who has engaged in purposeful conduct creating a "substantial connection" with the forum state, even if the conduct is limited to a single act. *Id.* at 1283. "Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Id.*

Here, DCS posits that BCE's alleged trademark infringement—BCE's use of the Mark to advertise its services on its website and other national websites—is a tortious act substantial enough to support the exercise of jurisdiction. But "the mere posting of an infringing trademark on a website 'without more'" is insufficient to demonstrate that BCE purposefully aimed its activity toward Florida. *Id.* (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321-22 (9th Cir. 1998)). Rather, DCS must illustrate that, through its alleged violation, BCE intentionally targeted DCS to accomplish pecuniary gain. The circumstances surrounding DCS's claim simply do not support this conclusion.

During the time period before DCS informed BCE of the issue, BCE's alleged trademark infringement can be described, at best, as "untargeted negligence" insufficient to meet the *Calder* test. *See Calder*, 465 U.S. at 789 (distinguishing between "untargeted negligence" and intentional acts expressly aimed at the forum state). DCS has not alleged that when BCE began marketing its services under the name "Bella Collina Events," BCE was intentionally trying to feign an association with DCS or otherwise benefit from its existence. Rather, BCE was seemingly oblivious to the fact that it was providing wedding-related services under a banner nearly identical to that of a company providing similar services in Florida. Its inadvertent conduct cannot form the basis of jurisdiction.

Even after BCE was apprised of the issue, its conduct toward Florida remained unchanged. The fact that BCE filed an application with the United States Patent and Trademark Office is a red herring that does not speak to whether BCE's conduct was aimed at Florida. Specifically, irrespective of the propriety of BCE's actions, BCE's conduct amounts to nothing more than a potential trademark violation. BCE did not target any

7

behaviors at Florida in conjunction with or subsequent to filing the application, neither did it take advantage of its new-found knowledge of the confusion to attract DCS's potential customers to North Carolina.

The cases on which DCS relies in support of jurisdiction are instrumental in establishing why due process demands that BCE *not* be subject to jurisdiction in Florida. Both *Licciardello* and *Panavision* operate from the principle that, without more, a trademark violation is insufficient to establish jurisdiction over a non-resident defendant. But the circumstances present in those cases—clearly distinguishable from the facts of the case at bar—led the courts to conclude that the exercise of personal jurisdiction was warranted. *See Licciardello*, 544 F.3d at 1287; *Panavision*, 141 F.3d at 1321-22. In particular, the "something more" than the trademark infringement was that the defendants' conduct targeted the plaintiffs specifically to accomplish pecuniary gain through that relationship.

In *Licciardello*, the defendant allegedly used the plaintiff's trademark name and picture on a website accessible in Florida, implying that the plaintiff had endorsed the defendant and his products. 544 F.3d at 1287. The purpose was to make money from the implied endorsement. *Id.* The court concluded that "[t]he unauthorized use of [the plaintiff's] mark, therefore, individually targeted [the plaintiff] in order to misappropriate his name and reputation for commercial gain," which sufficed to satisfy the "effects" test. *Id.* at 1288. Similarly, in *Panavision*, the effects test was satisfied because the defendant "engaged in a scheme to register [the plaintiff's] trademarks as his domain names for the purpose of extorting money from [the plaintiff]." 141 F.3d at 1322.

Applying *Calder*, *Licciardello*, and *Panavision*, it is clear there is nothing "more" here that would subject BCE to personal jurisdiction in Florida based on its alleged trademark violation. Because the plaintiff has failed to establish that BCE expressly aimed its trademark violation at DCS, anticipating that it would cause harm to DCS, the Court concludes that the "effects" test has not been met.

In sum, there is no basis for the exercise of jurisdiction over BCE in Florida.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and, in the Alternative, to Transfer to the Middle District of North Carolina (Dkt. #6) is GRANTED.

2. Plaintiff's Complaint (Dkt. #1) is DISMISSED without prejudice for lack of personal jurisdiction.

3. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 12th day of February, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\OCALA\14-cv-0678 mtn to dismiss.docx